Please introduce yourselves and how much time you intend to take. Lee Louder on behalf of the Chicago Board of Education. I wasn't sure how much time. Usually it's a half hour, but together. I'd like ten minutes for my initial and five for rebuttal please. Good morning, your honors. My name is Tyson Rohn. I'm General Counsel for SEIU Local 73. We'd like seven minutes please. Good morning. I'm Sharon Purcell, Assistant Attorney General on behalf of the Illinois Educational Labor Board. We'll take the other eight. Yes, exactly. Or seven and a half. That will work. Thank you. Thank you. Your honors, counsel, may it please the court. I'm going to make two arguments. The first is that this court has a clean slate to protect the student records, confidentiality of student records here, because the standard of review is novel. The second argument I'm going to make is that four rules of statutory construction support the board's argument in this case, and none supports the arguments of my opponents. So I'll start with the standard of review. First, neither the IELRB nor the unions have cited a single case where a court has ordered a school district to turn over student records to an employee union. The IELRB does talk about the standard of review, and they insist that the standard of review for an unfair labor practice is a clear error. That's true. We don't dispute that, but that's not what we have here. What we have here, and the IELRB concedes, is the court is being asked to interpret two statutes. The IELRB would like you to ignore the ISSRA, the Illinois School Student Records Act, or ISFRA, but you've got two statutes here you have to interpret, and that's a clear question of statutory interpretation, which is review de novo. You don't dispute that the student records would be relevant to the determination of the dispute involving the security guard? They may be relevant, but I believe that the union already has the information they need, and it's obvious that they do from their statement of the facts. They know that these kids have been disciplined in the past, but I don't think the School Records Act says that you don't protect the records of kids who are bad actors. It doesn't make that distinction. So, no, I don't believe that they need these records. They know, well, Mr. Cooper was in the altercation with these kids. He knows what happens and could testify to it. The security officers in the school know what's going on. If a kid's expelled, the security officers know that because they have to keep that child out of the school, right? Clearly, there could be circumstances, whether the union knew through other channels, that the two students involved had other problems, had other disciplinary problems. It's really beside the point. There could be circumstances where an employee or a union member is facing discipline or termination, and it involves interaction with the student, and the union or the employee doesn't know the student's background and so doesn't have the opportunity to explore whether there is something in the student's records that would call their credibility into question or enable the employee to more adequately defend himself or herself. And ISRA provides for that. It provides a mechanism for the unions to obtain the student records in that case. And that brings us to the first rule of statutory construction I'd like you to consider, which is when you have two statutes on a related issue, you have to try to give effect to both of them. And so the way that you can give effect to both of them here is to require the union to get a court order, which is what ISRA requires. Let me just clarify something. Are you, in your appeal, stating as part of your appeal that these documents are not relevant? No, we're not saying they're not relevant. I didn't think so. No. So that's not an issue. They might be relevant, and if they are, then a court could determine that when they use those records in camera. Okay, but we don't need to decide that. Whether they're relevant? No, I don't think so. I think that that would be for a court that's looking at the records to decide, and I think that's what ISRA requires. The second rule of statutory construction I'd ask you to consider, and maybe I should go back to the first, I think that this court should look at its own decision in Wray D.H. v. Chicago Housing Authority where there was an issue of student records also, and the plaintiff's attorney refused to turn them over. This court said that was appropriate because the attorney was trying to get a determination of what the student records privilege requires. That's what we're asking for here, and that's why we shouldn't have been hit with an unfair labor practice when we're trying to assert the statutory rights that we're required to uphold. The second rule of statutory construction is inclusio unius, which is the ISRA has a list of entities to whom these records can be released, and employee unions are not among them. The third rule has to do with the previous enactment of ISRA. So if you have the General Assembly, you're supposed to assume that they know what they've enacted in the past. They enacted ISRA in 1976. They enacted the IELRA in 1984. They well knew that there were protections for student records in ISRA, and they didn't repeal those, so you have to give those effect. The fourth rule of statutory construction I'd ask you to implement is the more specific statute trumps the more general. Here the more specific is the Student Records Act, the more general being the IELRA protection for good faith bargaining. So if you don't have any questions, I'd ask you to reverse the decision. I have a question. May I please get your attention? This is all your chance. They do this every time we sit. Really? The University of Belize is conducting a test of the building of the threat system. This is all your chance. Has this been an actual incident? Have you issued further instructions to the building of the threat system? This is all your chance. At the end of the day, if they apply for a court order, you will release the records, correct? If the court looks at those records and finds that they're relevant and should be released, of course we would comply with the court order. That's pursuant to Section 5 of the Illinois School Student Records Act. Yes, Your Honor. Thank you. What about the fact that Section 6 of ERISA states that to any person as specifically required by state or federal law, and the argument being that under state law it should be provided because of the grievance process? Well, the IELRA does not specifically say that the district has to turn over student records. This isn't a case like OFOX where the statute says in a special education case the district has to file the student's records when the parents are claiming the district didn't provide proper special education services. That's not this case. There's no specific requirement in the law that we have to turn over these records. The specific requirement in the law is in ISRA, which says we're not supposed to turn over those records to anyone but the people in Section 6. And one of those is, of course, the court order, which is what we're asking this Court to find. Well, you're reading the words specifically in and of itself. If it's a specifically required, if you use those two words together, in this situation isn't it required for these documents for the purpose of the grievance procedure? No, it's not. I don't think that's a proper – I think the difference is that, which I just said, it's specifically required when the statute says you have to turn over these records. It's not – nothing in the IELRA says you have to turn over records to an employee union. You have to turn over student records to an employee union. That would be specifically required. Any other questions? Thank you. Good morning, Your Honor, Your Honors. Sharon Purcell on behalf of the Educational Labor Relations Board here. Your Honors, the Labor Relations Board did not clearly err when it found that the Chicago Board of Education violated its duty to bargain in good faith when it failed to provide relevant and necessary redacted information that the Chicago Board was required to provide. The Labor Relations Act, Educational Labor Relations Act, specifically Section 14A-5, provides that there's a fundamental obligation on the part of the Chicago Board of Education as an educational employer, and that fundamental obligation is a statutory duty to bargain. 14A-5 specifically prohibits a refusal to bargain, and it includes discussion of grievances as what the employer is required to do. So the Board's position would be that the duty to bargain takes precedence over any statute, not just the Student Records Act, but HIPAA. The union or the employee can get health records, mental health records, any records, right? Your Honor, there's a balancing of the Labor Board recognized that the Chicago Board has duties under the Student Records Act, but it has to balance those duties with its duties under the Labor Relations Act, which is that you have to provide relevant and necessary information, what form that information is going to take. It can be completely redacted, sanitized. Redacted, the cases involving redacted information involved bulk student records sought for research or statistical purposes, where redaction of the names effectively made those students anonymous. Here, everybody knows the two students we're talking about, and redacting information doesn't protect their identity in the least. But if unions cannot get information that is relevant or that will lead to relevant information in a grievance arbitration when they're representing their employees in a bargaining unit, the protections in the Act, it just renders them meaningless. But that's not our situation. You said they can't get the documents. You heard the word can't get. You can't obtain the documents. They can obtain them. In fact, here, if you send out a subpoena and enforce it in court, you might be able to get the documents that would be relevant. There's no provision that requires that. Section 14A5, and this is traditional labor law. Your Honors, these two acts have been in place together for 30 years, the Educational Labor Relations Act, which was enacted after the Student Records Act. So this balancing has been going on. You've got a large educational system that's governed by the Educational Labor Relations Act, that governs the relations between the employer and the employees, which is tens of thousands of people. So this has been going on for 30 years. It hasn't been presented to the Labor Board or, as far as I know, anywhere else. So the Chicago Board, it knows what its duties are. It knows it has these bargaining duties and in grievance arbitration. It knows that it has a duty to provide information of some sort. They didn't say they weren't going to provide the information. They said, you can't force us to violate the ISRA. That's what they're saying. They said, we can't give this to you voluntarily under ERISA. We have to – it's not really a – one of the arguments the Council made was if we can reconcile these two without defeating the purpose of both. The Board recognized. It doesn't have to be. However that information can be provided that the union needs, where it's not connected to either student, whatever their history is, and that's all that they were asking for because they needed to be able to defend their employee who was losing his job. Right. So all they had to do was subpoena it. If the subpoena wasn't responded to under the rules, then you go to court. Your Honors, that makes collective bargaining so burdensome, and there's nothing – Where's the burden? I don't understand the burden. The burden is, first of all, it's not required under the Act. So you're engrafting and placing the circuit court into the collective bargaining agreement, which the General Assembly has not provided for. So we're supposed to – that goes back to Justice Mason's question. Are we supposed to just ignore ERISA? Just ignore it? The Board did not ignore it. And first of all – How did it not ignore it? It balanced the interests. It's – the union has a legitimate interest in relevant information, and this is relevant information in order to defend its employee. The Chicago Board has interest in protecting confidentiality. And the Board, the Labor Board, doesn't want it. I mean, they have no interest in violating student confidentiality. Well, under the Student Records Act, a parent has a right to be heard. They have a right to notice and be heard before their child's records are released. Where does that come into play under your scenario? You know, Your Honor, in this situation, there's any number of things that – actually, the parties should settle – you know, should be able to work this out. And I would imagine they have time and time again, given that there's 30 years of these two statutes coexisting in a very large school district. And so the parties could decide, and this is how it should work, here's how this information is going to be provided in exchange. When that breaks down – Where is the right – in your scenario, you're talking about a labor dispute and information that the employee needs to defend the disciplinary action. Where is there, in there, the opportunity for a parent whose child's records are going to be released, to be heard? Because the Student Records Act clearly provides for that. That's for the – the Chicago Board has to – that's what I'm saying when I say they know what their obligations are. And the Chicago Board has to meet – they have to meet those obligations under the Student Records Act. But at the same time, they have to meet their obligations under the Educational Labor Relations Act. So the way you think it's been working, and there's no case on this, the way you think it's been working is that the Board has been giving notice to parents when student records are requested and giving them an opportunity before those records are turned over to be heard? Your Honors, I couldn't say what the Chicago Board does. I mean, whatever their duties are under any statute, because, you know, there's a lot of regulations that they have to comply with. But if every time they're going to take and say, well, this trumps our duty to bargain, which they have no authority for. Section 17 of the Act clearly sets forth that if there's a conflict between laws, the Labor Relations Act controls. And that really indicates the importance that the General Assembly has placed on collective bargaining and the collective bargaining relationships. But what Ms. Lauder is saying is there is no conflict, because if the union needs the information, it has a vehicle to get it under the Student Records Act. It need not do that because the employees have rights under the Labor Relations Act. And all of this falls under the Labor Relations Act because it involves collective bargaining. It's policing the employees' collective bargaining agreement and grievance processing and grievance arbitration is the method for policing the parties' collectively bargained agreement. If they cannot do that because they have to run to court, if they can't really bargain, really what the Chicago Board is saying here is we have decided we don't need to bargain here because we've decided this other law trumps this. The Labor Board did what it is supposed to do. They followed labor law. They took into consideration each side's competing interests and the fact that the union made various suggestions for how to meet this issue. Now, if there's other issues out there, if there's some other way of turning over this information with nothing, just some kind of summary. Well, what's wrong with going to court? I mean, what's wrong with sending out a subpoena and going to court? There is another way. That's what's provided here. The General Assembly does not provide for that in the labor practice. But we're not only looking at that. I mean, again, we have to, if we can, reconcile these two and they can be perfectly reconciled. They're already perfectly reconciled. First of all, the Student Records Act permits it recognizes that educational employers do have these other obligations that they have to meet under federal and state laws. And so it provides that. But specifically required. So where is it specifically? We've gone through this? It's specifically required in Section 14A5, which requires collective bargaining and collective bargaining in the context of We're not talking, it has nothing to do with student records. It doesn't say specifically. It's got to be specific. That's general. That's general. Oh, no, Your Honor. I just don't agree that that's general. There's a specific duty to bargain. It's not a specific duty. It says specifically required. And that is when it's specifically required. What is specifically required? That they bargain. Yes. That includes exchange of information. And when the parties don't agree on that, then, for instance, the Chicago Board says, you know, we're really concerned about this. The union comes back and says, here's what we'll do. Here's what we can do to meet this. And at a certain point, they have to be able to get relevant information. Whether or not it's the specific records, whatever that's going to look like, it doesn't allow for, no, we're not doing it. Here's what we're going to tell you you have to do and then come back to us, if you like. That is not provided for in 14A5. And 14A5 specifically governs these situations. And to find otherwise just really undermines the policing of the collective bargaining agreement, which is so fundamental and is the lifeblood of, you know, collective bargaining. If you can't police and enforce your collective bargaining agreement, you know, it's really un- Does 16A5 give you access to the information that you want? Oh, we don't want it. The board doesn't want it. The board is just deciding, you know, what party's interests you are. I get it, but the board doesn't want it. I mean the labor board. Right. But does 16A5 get you the information you're seeking? It permits, as I said, it permits the provision of records. Now, you know, the labor board is still going to look at it because they're looking at, they're administering the Educational Labor Relations Act. How are you adversely affected by 16A5? The labor board itself? Because the labor board is neutral. They don't have. Right. They're just deciding the party's rights. What's wrong with taking the subpoena to court and asking the court to enforce it? Your Honor, as I said, that's not part of collective bargaining. The circuit courts are, if you're going to be pulling them into the party's collective bargaining process, there's no provision in the Educational Labor Relations Act for that. And there's nothing, there's no reason to find that the Student Records Act would trump the Collective Bargaining Act because, and actually the opposite is true where Section 17 specifically says, you know, and to say that this doesn't conflict, this is very much a conflict. If you're saying we can't, you know, you have to go to the court, that really, as I said, that really renders the act in regard to, you know, the party's collectively bargained agreement and how that's going to govern the relationship in the workplace. It renders it meaningless because parties have to be able to bargain and they have to be able to know that the act can be enforced and that these substantive rights that the act provides to the employees, that's what we have to remember too, it provides substantive rights to the employees and those substantive rights are not, you know, the act doesn't provide anywhere that it's contingent on the. No, but you're talking apples and oranges. The act provides that the arbitrator can send out a subpoena, right? The parties. Can issue a subpoena. The Labor Relations Act? Doesn't the Labor Relations Act? The Labor Relations Act governs what the party, the collective bargaining agreement. The parties, what they, how they fashion their arbitrations and their grievance process, that's contract administration. Okay, but a subpoena can be issued, right? If the arbitrator did. Okay, if the arbitrator could send out a subpoena and if that subpoena is not responded to, what happens? What happens? Well, we have an example here. The arbitrator can, I don't know what happened in the arbitration, that's really, I would say counsel for the union if you want to know the specifics of it because it's just not relevant to the board's determination. But the arbitrator, I know from the record the union asked that the arbitrator take an adverse inference. I don't know, you know, what came of that because the board's not party to that. There is an enforcement mechanism, though, to go to court and force a subpoena, isn't there? The party still, they have a duty to collectively bargain. The duty to collectively bargain is exchange information. So whether or not, you know, what the arbitrator does doesn't change their duty to bargain. You know, you have a duty to bargain. And I don't know, I don't know what the, what process, where the circuit court would come in on this. I mean, the circuit court is never involved, to my knowledge, in matters under the Educational Labor Relations Board other than where the act specifically provides for instance to let the board go and ask for an injunction. But it is under the Student Records Act. Court is involved under the Student Records Act. It specifically contemplates. But that would violate, I would suggest that that's contrary to the Labor Relations Act. And that's where, that's kind of, I mean, if you want to say it, that's where, I mean, that's where the two things meet up. That's where, you know, it's okay, so how are we going to balance these two interests? And the board did that, and it did that in traditional labor. It's very well-grounded. Its decision is very well-grounded in the act and in labor law. That, you know, it's what are the interests, balance the interests, did the employer make any effort to accommodate when the union said here's what, you know. So you come back and you say, okay, well, we can't, you know, we'll give you, we'll give you, I don't know, we'll give you a paragraph, whatever it is. And then the parties decide if that's sufficient. So whatever that, whatever those records are going to look like, it doesn't have to be, you know, the records. It doesn't have to be records with names redacted. They can be very sanitized, and, you know, the relevant information, or lead to relevant information. But the point of it is there are collective bargaining duties, and they don't take a back seat. It's, you balance it. So you can't just say, no, go to court when there's, that's not part of the collective bargaining process. It's not part of the act. The act does not provide for that. And really the Student Records Act 686 recognizes there are other obligations that an employer has, and that the government is always, always balancing a lot of regulatory obligations. And, you know, you have to know how to do that. Your Honor, I really do. It's 30 years, 30 years that these two acts have co-existed. Anything else? Do you have any questions? I think you're done. I'm done? Okay, thank you, Your Honor. May it please the Court. I was involved with this case from the very beginning. I'm the one who submitted the information request. I'm the one who filed the charge. And now I'm here before you and have the privilege of being here before you. A couple of years ago, Clinton Cooper came to me. And Clinton Cooper has one of the toughest jobs in Chicago public schools. He works at Hirsh High School. It's in the Englewood neighborhood with a lot of tough kids. And he is a security officer expected to keep the peace at the school. He walks a tightrope every day. He can use reasonable force but not excessive force. And he came to me saying that there were two allegations against him, both that he fought with kids, one of which he denied and the other of which he said he acted in reasonable self-defense. And then he told me, and you need to know about these kids. These are bad kids. They're liars. They've been in trouble for lying. They're fighters. They're always getting in trouble for fighting. Of course, I don't have those records because I don't keep them, but I know it's been happening. And I can't tell you every instance, but I know it's happened. And I've heard from my coworkers that they got in trouble for these allegations that they made against me. I wanted that information, and I thought that I was entitled to it. This is the guy's livelihood on the line. So I asked for it. And the Board of Education said no, that they couldn't provide it because it was student records. I think it's fundamental that in a case like this, someone should have a right to defend themselves. Nobody is saying that Mr. Cooper doesn't. The Student Records Act has a mechanism where student records are relevant to another matter to go to court so that parents who clearly have an interest in whether their child's records are released can be heard. It's not denying your client that information. It's just saying here's a step you have to go through because there are third-party interests at stake as well. So that was a decision we made as a union. We made the decision, do we want to go to court and comply with this procedure, or do we want to file an unfair labor practice charge? And we decided to file an unfair labor practice charge. And the reason we decided to do that, first off, is a legal reason. Because legally we felt that we were entitled to the information pursuant to the Educational Labor Relations Act. There were also several practical reasons. I am a simple labor attorney. It makes me incredibly nervous being in front of three judges. I'm nervous in front of just one judge. I don't go in front of judges. I go before arbitrators, and occasionally I go to the labor board. That's what I know. I wouldn't even know how to go about getting a subpoena. It would take an incredible amount of resources from the union to get me up to speed to figure out how to go to court when that's not what I do. Also, I cite to a case in the brief where someone did go to a subpoena, get a subpoena, in the labor board proceedings, and that resulted in a year's delay. So here we have Clinton Cooper who is out of work on false allegations, and he has to be out of work another year while we're waiting for a subpoena to be issued or for subpoena enforcement proceedings. So all of those reasons is why we decided to pursue the unfair labor practice. And so did the union propose giving notice to these students' parents about the release of their child's records to your client so that he could defend himself in his disciplinary proceedings? Did the union acknowledge that the parents might have an interest in releasing their children's records? So as my colleague pointed out, in the Labor Act there's this balancing. And if an employer claims confidentiality, there's supposed to be attempts by the employer to accommodate. Here there were no attempts by the employer. The only attempts were by the union. I said, well, we'll keep the information confidential. In fact, under our collective bargaining agreement, we have to keep the information confidential. We won't use it outside of the arbitration proceedings, and I'll accept redacted information. When the Student Records Act provides penalties in the possibility of a civil action for violation of its provisions, how can the board comply? Part of the reason we're here is to get a decision from the court saying we're entitled to this information. Maybe that will give the Board of Education the cover it needs. We think the case is clear. But to go back to your earlier question, did we ever propose giving the parents notice? No, we didn't. Did the board ever propose? No, it didn't. If they'd made that proposal, that would have been part of that interactive process that should have occurred pursuant to the accommodations. So the framework, and I think our brief sets forth the framework as we see it here. This is all about the interplay between the Educational Labor Relations Act and the Student Records Act. Do you believe they could be reconciled so that the school board would not agree to do anything without a court order? Okay, yes. So either there is a conflict, and if there's a conflict, I think Section 17 of the IELRA gives us the answer. We think that there are ways to show that there is no conflict. We don't believe that the way to show that there is no conflict is, hey, go get a subpoena. We think that that guts the obligations under the IELRA. That's not reading the two in harmony. Here's how we would reconcile them. Section 6A6 first, which says, as specifically required by state law. There was some discussion about, well, it doesn't say it in the text of the IELRA. I think the General Assembly probably knew what it was getting into when it adopted the IELRA. The IELRA is modeled after the NLRA. And from the very first year the NLRA existed, there are these cases saying unions get information that's relevant. So I think the General Assembly probably knew that in 14A5 what they were getting into was giving unions access to information that's relevant to members' cases and to the collective bargaining process. So that's how I'd reconcile it first, with Section 6A6. The other way I'd reconcile it is this idea of individually identified, records by which students can be individually identified. And I asked for redacted student records. If those records were redacted, the students could not have been individually identified. You are absolutely right when you say I still would have known who they were. But as I read that Student Records Act, redaction is really all that's required. If you go back to that Supreme Court Bowie decision, the Supreme Court Bowie decision on the Student Records Act is about a paragraph. And it says the records were masked and that's all that's required to comply with the Student Records Act. But that was, those again, the cases that you cite, were instances where the records were sought for purposes of research or statistical analysis and where they were asked for in bulk. And so a court could say, yes, eliminating identifying information will mask those records. But in this context, where everybody knows the two students you're talking about, how can we talk about masking? So going back to the Bowie case, again, that Bowie analysis on the Student Records Act was a paragraph saying it's masked, that's all that's required. Then the Bowie court went on for pages about this Illinois FOIA unwarranted invasion of privacy issue and then it agonized about whether maybe one student or two could be identified. It did that analysis for purposes of the Illinois FOIA, but it didn't do it for purposes of the School Student Records Act, which to me at least implicitly says all that's required under the Student Records Act is redaction. That's what Bowie said. The other case that I think is a little less relevant but still is somewhat on point is this cut bank decision from the Montana Supreme Court. It was a decision under FERPA, and FERPA has a little bit different language, but it goes to the same sort of thing. It says don't reveal student records if they can be identified. There, there were two kids who were shooting BB guns and a newspaper wanted to know what discipline the kids got, so they asked for it. And then they agreed to accept the information redacted. And the newspaper said, well, go get the parents' permission. So they tried and they couldn't get the permission. And what the Montana Supreme Court said is, well, they agreed to accept redacted records, and that's all that's required for FERPA. I think the same can be said for the Student Records Act. All that's required is redaction. What about parents' permission? Again, I think that would have been part of the accommodation. But let's say, using the case up west, if the parents don't say, they come back, the Chicago Board goes to the parents and says, no. Now what? Absolutely. In the Montana case, they did that. The newspaper went to the parents. The parents said no. And the Supreme Court still said, you still have to provide them with the records. You just have to redact them. So that was the case. So just asking the parents is sufficient. I guess it's notice. Right. And to the notice issue, going back to the notice issue and whether the School Student Records Act requires it, maybe that's another way to reconcile the two. To say, all right, parents, here is some information that we have to release. You have a 14-day notice period. If you'd like to put a rebuttal in there, we'll send that right along, too. That's something we would have been willing to consider. That could be a subject of collective bargaining, certainly. Absolutely. It hasn't been. No. So the negotiations here, you hit a brick wall. Right. And that brick wall was the Student Records Act. But if, and you were willing to receive them redacted. Yes. They could notify the parents, or you would notify, I mean, somebody would notify the parents. We would have been willing to consider that, yes. Okay. Yes. And that's it. I mean, do you think, in that case, then, under the Labor Act, they should have turned over the documents. I think so, yes. That's all you had to do. Yes. And there's a million other possibilities, as well. I mean, it could have been that we didn't get the documents, but we got a stipulation that both of the kids were disciplined in the past for untruthfulness, and both of the kids were expelled for this incident. That's what that accommodation process is for. But we shouldn't have come up against a brick wall just saying, we're not giving you the information. That's it. That's a violation of our right to information and a violation of the employer's duty to bargain. You asked about the arbitrator's authority to issue subpoenas. I just want to touch upon that. I frequently have employers tell me that, or tell arbitrators, that they don't believe that arbitrators have the authority to issue subpoenas. In labor arbitration, I'd say it's somewhat of an open issue, but it is an issue we entertain. If we get an arbitrator's subpoena, we usually don't go to court to enforce it because we don't know if it is enforceable. What we do is ask for the adverse inference at the arbitration hearing, and that's what we did in this case. You asked about HIPAA. HIPAA is federal law, so I think that puts us in something of a different quagmire. We do run up against the HIPAA issues as well when we ask for our members' personal medical information. The IELRA says notwithstanding any provisions of state or federal law, it takes precedent. No, the IELRA does not take precedent over federal law. That's a supremacy issue, and we never argue that the IELRA would take precedent over HIPAA. And then all of the rules of construction that are espoused by opposing counsel. All I would say about those rules of construction is those rules of construction are default rules. Here we don't need default rules because we have plain language in the Act. And the plain language says if there's a conflict, the Labor Act controls. And we think there's ways to get around the conflict, but if there is, we don't go to canons. We go to what the Act says, and the Acts are clear here. That's all I have. Are there any other questions? Thank you very much. Thank you. I just want to make two brief points. One is the Labor Board did not do any kind of balancing here. When we asked them for a stay, they said, the Student Records Act doesn't apply because these aren't student records because they're masked. That's not a balancing. That's just ignoring what the Act says. And as you said, these records can't be masked because they have to do with two specific students. The other thing I wanted to address, I saw that case about how it took a year to get a subpoena in the AFSCME case. I looked at that case carefully, and it makes no sense. The timeline makes no sense. The third-level grievance happened in January of 87. The arbitration was scheduled in April of 87. And the court enforced a subpoena in November of 88. That doesn't make any sense to me. The grievance was withdrawn in May of 87. The court enforced a subpoena more than a year later. I think there's something missing there. We have to go to court often when our records are subpoenaed by the juvenile court, for example. I've never seen it take a year. So I just think that's a red herring. I'd ask you to overturn the Board's decision. Thank you. Thank you very much. We'll take the case under advisement. Appreciate the well-briefed issues and arguments at council. We'll take a brief recess before calling next.